**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**KRISTIE A.,**

**Plaintiff,** **25-CV-242Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

---

## DECISION AND ORDER

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff applied for disability and supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on January 3, 2022, alleging disability beginning October 1, 2020, at the age of 27, due to bipolar disorder, depression, anxiety, separation anxiety, learning disability, and the inability to count money or tell time. Dkt. #3, p.73.

On November 15, 2024, plaintiff appeared by telephone with counsel and testified, along with an impartial vocational expert ("VE"), Marilyn Buter, at an administrative hearing conducted before Administrative Law Judge ("ALJ"), Ellen Bush.

Dkt. #3, pp.33-71. Plaintiff resides in a house she inherited from her grandmother, who passed away in 2022, with her daughter, age 4. Dkt. #3, pp.39-40. Plaintiff provided full-time care to her grandmother in 2021. Dkt. #3, pp.49-50. Her cousin lives in the apartment upstairs. Dkt #3, p.56. He is remodeling the upstairs and she is remodeling the downstairs. Dkt. #3, p.56.

Because of her anxiety and fear of constantly failing, plaintiff never attempted to take the permit test for her driver's license. Dkt. #3. p.41. She further explained that because she reads at a third grade level, she was afraid that she wouldn't be able to understand the questions. Dkt. #3, p.41. Plaintiff graduated high school with an IEP diploma. Dkt. #3, p.42. Her step-father drives plaintiff to and from work and drives her daughter to and from pre-kindergarten. Dkt. #3, p.57.

Plaintiff testified that she was fired from employment with the Resource Center after she became physically violent with another employee. Dkt. #3, pp.47 & 54. She explained that this employee was telling her that she should be doing her job, which she was, and as plaintiff tried to walk away, the employee mumbled something and a "switch clicked;" the next thing plaintiff knew, she was "beating on this poor girl." Dkt. #3, p.54. Plaintiff testified that she discussed with her therapist how she blows up and doesn't show remorse "until the aftermath is said and done." Dkt. #3, p.54.

Plaintiff had been working full-time at Walmart selecting groceries from online orders and delivering them to customer vehicles in the parking lot since July of

2022. Dkt. #3, p.43. She explained that after her grandmother fell and had to go into a nursing home, she needed a job really bad and her sister's boyfriend worked there and was able to ease her through her social anxiety as she started working the same shift. Dkt. #3, pp.44 & 51. Plaintiff works 11:15 am to 8:15 pm. Dkt. #3, p.52. She experiences anxiety at work and suffers from severe depression, but could not miss work because she has a child to support. Dkt. #3, p.53.

When asked to assume an individual with plaintiff's age, education, and past relevant work experience who was capable of work at all exertion levels, who could understand and remember simple instructions, sustain attention and concentration to complete simple tasks, adapt to simple changes in routine, have occasional interaction with coworkers, and work in the vicinity of, but not interact with, the general public, the VE testified that plaintiff would be able to perform her past work as a hand packager. Dkt. #3, pp.67-68. The VE testified that plaintiff could also work as a routing clerk, router, and marker, each of which were unskilled, light exertion positions. Dkt. #3, p.68.

The ALJ issued a decision that plaintiff was not disabled on May 17, 2024. Dkt. #3, pp.18-27. The Appeals Council denied review on February 19, 2025. Dkt. #3, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on March 20, 2025. Dkt. #1.

**DISCUSSION AND ANALYSIS**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits her ability to perform physical or mental work-related activities.

20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate whether the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) although plaintiff had engaged in substantial gainful activity since the alleged onset date of October 1, 2020, there was a continuous twelve-month period during which she had not engaged in substantial gainful activity; (2) plaintiff's intermittent explosive disorder and bipolar disorder constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at all exertional levels and could understand and remember simple instructions, sustain attention and concentration on simple tasks, adapt to simple changes in routine, occasionally interact with coworkers, and work in the vicinity of, but could not interact directly with, the general public; and (5) plaintiff was capable of working as a routing clerk, router, and hand packager, which are unskilled, light exertion positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #3, pp.21-26.

Plaintiff argues that the ALJ erred in evaluating the opinion of the consultative examiner. Dkt. #5-1, pp.7-14. Specifically, plaintiff argues that the ALJ failed to properly articulate the basis for discounting the consultative examiner's opinion that plaintiff exhibited marked limitations in concentration, persistence and pace, which would suggest an inability to remain on task as required for substantial gainful employment. Dkt. #5-1, pp.7-14.

The Commissioner responds that the ALJ properly assessed the consistency and supportability of the consultative examiner's opinion in determining plaintiff's RFC, which the Commissioner argues is supported by substantial evidence. Dkt. #12-1, pp.6-10. More specifically, the Commissioner notes that although the ALJ found all of the medical opinions unpersuasive, she generally adopted greater limitations than such opinions suggested. Dkt. #12-1, p.6. As for the consultative examiner's opinion that plaintiff had a marked limitation for sustaining concentration and performing at a consistent pace, the Commissioner argues that the ALJ appropriately determined that such a limitation was not supported by the mild attentional difficulties exhibited on the consultative examiner's mental status examination. Dkt. #12-1, p.7. Furthermore, the Commissioner argues that the ALJ properly noted the inconsistency of the consultative examiner's opinion with plaintiff's full-time employment. Dkt. #12-1, p.7.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner

is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp.3d 2, 7 (W.D.N.Y. 2021), *citing* 20 C.F.R. § 404.1520c(a) & (c). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.*, *citing* 20 C.F.R. § 404.1520c(b)(2) & (c).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(1). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.*, *citing* 20 C.F.R. § 404.1520c(c)(2). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec.*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to

treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Id., quoting Shawn H. v. Comm'r of Soc. Sec.*, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original).

Plaintiff underwent a consultative psychiatric evaluation by Todd Deneen, Psy.D., by zoom on April 25, 2022. Dkt. #3, pp.491-495. Plaintiff indicated that she had obtained an IEP diploma following a history of special education for a learning disability. Dkt. #3, p.491. Plaintiff reported that she was unable to work because of her anxiety in crowds of people. Dkt. #3, p.491. She further reported that she becomes nervous when she meets new people. Dkt. #3, p.492. She endorsed episodes of depression, including hypersomnia; episodes of panic with nausea, sweating and breathing difficulties; and episodes of impulsivity and elevated moods. Dkt. #3, p.492. On mental status examination, plaintiff's demeanor was observed to be immature, with very confused thought processes. Dkt. #3, p.492. Her attention and concentration was observed to be "[m]ildly impaired due to suboptimal effort, possibly attention deficits." Dkt. #3, p.493. She was unable to correctly solve 3+4 or 5-3 or perform serial 7s from 100 or serial 3s from 20. Dkt. #3, p.493. Plaintiff's recent and remote memory skills were also observed to be "[m]ildly impaired due to working memory deficits, possibly suboptimal effort." Dkt. #3, p.493. She could recall 3/3 objects immediately and 2/3 objects after delay and recite 5 digits forward and 2 digits backward. Dkt. #3, p.493. Her intellectual functioning

was estimated to be borderline to impaired, with a somewhat limited general fund of information. Dkt. #3, p.493. Her insight and judgement were observed to be fair. Dkt. #3, p.493.

Dr. Deneen opined that plaintiff would have no limitation using reason and judgment to make work-related decisions; interacting adequately with supervisors, coworkers and the general public; sustaining an ordinary routine and regular attendance at work; maintaining personal hygiene and appropriate attire; and being aware of and taking appropriate precautions with respect to normal hazards. Dkt. #3, p.493. Dr. Deneen also opined that plaintiff would have a mild limitation understanding, remembering and applying simple directions and instructions and a moderate limitation regulating emotion, controlling behavior and maintaining well being. Dkt. #3, pp.493-494. Dr. Deneen further opined that plaintiff would have a marked limitation understanding, remembering and applying complex directions and instructions as well as sustaining concentration and performing a task at a consistent pace. Dkt. #3, p.494. Dr. Deneen opined that plaintiff's limitations are "caused by her cognitive deficits, lack of motivation, and mood symptoms." Dkt. #3, p.494.

The ALJ did not find Dr. Deneen's opinion persuasive. Dkt. #3, p.25. In reaching this conclusion, the ALJ explained:

> I find that the record supports a greater degree of limitation relative to the [plaintiff's] ability to interact with the public, coworkers, and supervisors in light of her anxiety, irritability, and history of interpersonal workplace conflict. I did not find the opinion persuasive insofar as it includes a marked limitation relative to sustaining concentration and performing

> at a consistent pace. This limitation is not supported by the mild attentional difficulties exhibited on mental status exam and is inconsistent with her demonstrated capacity for full-time work.

Dkt. #3, p.25. More generally, the ALJ explained that plaintiff's "stable and largely benign clinical presentation" supported her RFC determination, noting that she had considered plaintiff's anxiety, irritibility, and history of a physical altercation with a coworker in precluding public contact and limited her to occasional interaction with coworkers" and had "considered the mild memory and concentration deficits that she exhibited at her consultative examination as well as her history of depression and anxiety in limiting her to unskilled work with only occasional simple changes in routine." Dkt. #3, pp.24-25.

The ALJ's determination that plaintiff has a mild limitation with regard to concentrating, persisting or maintaining pace is supported by substantial evidence. The ALJ appropriately determined that Dr. Deneen's assessment of this domain was not supported by plaintiff's mental status exam, which found her attention and concentration "[m]ildly impaired due to suboptimal effort, possibly attention deficits." Dkt. #3, p.492. In addition, the ALJ correctly noted that Dr. Deneen's assessment of a marked limitation in this domain was inconsistent with plaintiff's activities of daily living, which included full-time work. Dkt. #3, p.25. The ALJ also noted that plaintiff was primary caregiver to a young child, had provided care to her elderly grandmother, was able to maintain her home and was engaged in remodeling her home. Dkt. #3, p.25. The psychological consultants for the Disability Determination Services found no limitations in any functional domain. Dkt. #3, pp.78 & 103.

Psychotherapy progress notes also support the ALJ's assessment of plaintiff's RFC. On October 13, 2021, plaintiff reported that she was "able to work through the day without losing her temper" and on November 17, 2021 she reported that her mood swings had decreased and she was not as irritable. Dkt. #3, p.463. Dkt. #3, p.456. On February 7, 2022, Laurie Fenton, NP determined that plaintiff was medically stable, with a positive attitude and good sense of humor. Dkt. #3, pp.473-474. Plaintiff reported that she was "doing well" and had "energy and motivation." Dkt. #3, p.472. Although she was noted to be impulsive and immature, her mental status examination noted euthymic mood, good insight and judgment, intact memory, good attention and concentration. Dkt. #3, pp.472-473. Plaintiff's anxiety and depression symptoms were noted to be well controlled on October 11, 2023. Dkt. #3, p.550. Thus, substantial evidence supports the ALJ's determination that plaintiff was capable of working an unskilled job with limitations on the amount of interaction she had with others.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #5), is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #12), is granted.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED: Buffalo, New York**
**September 28, 2026**

**s/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**